IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


EQUITRANS, L.P.,
a Pennsylvania
limited partnership,

       Plaintiff,

v.                             Civil Action No. 1:15CV106
                                        (STAMP)
0.56 ACRES MORE OR LESS OF
PERMANENT EASEMENT LOCATED IN
MARION COUNTY, WEST VIRGINIA,
JEFFERY J. MOORE and
SANDRA J. MOORE,

       Defendants.


### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
### AND GRANTING PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS

    This is a condemnation case arising from a prior civil action between defendants, Jeffery and Sandra Moore ("the Moores"), and the plaintiff, Equitrans L.P. ("Equitrans"). In that underlying civil action, Equitrans held a right-of-way over the Moores' property to construct and maintain a natural gas pipeline. The Moores sued Equitrans, claiming that it built and maintained portions of the pipeline outside of the right-of-way, thereby breaching the right-of-way agreement and trespassing on the Moores' property. After a trial, a jury found that two portions of the pipeline violated the right-of-way agreement or were trespassing. This Court stayed a determination on whether to enter an ejectment order.

Equitrans then filed this action under 15 U.S.C. § 717f(h) to condemn a right-of-way through the portions of the Moores' property it was trespassing on. The Moores filed an answer, counterclaims, and a motion to dismiss the complaint for failure to state a claim. Equitrans then filed a motion to dismiss the counterclaims. For the following reasons, this Court denies the Moores' motion to dismiss the complaint and grants Equitrans' motion to dismiss the counterclaims.

## I. Background

In 1960, Equitrans entered into a right-of-way agreement with the Moores to build a pipeline under a portion of their property ("the 1960 right-of-way"). In 2012, the Moores sued Equitrans claiming that approximately 700 feet of the pipeline was built outside of the 1960 right-of-way (hereinafter referred to as "the underlying civil action"). Equitrans maintained that it constructed all portions of the pipeline within the 1960 right-of-way. Following a trial, a jury found that Equitrans' placement of two portions of the pipeline either violated the 1960 right-of-way agreement or trespassed on the Moores' property. The Moores did not claim monetary damages and sought only ejectment. This Court stayed execution of the judgment so that Equitrans could seek condemnation of a right-of-way through the property upon which it was found to be trespassing ("the Property"). The Property

consists of two portions of the Moores' property through which the pipeline runs, totaling approximately 0.56 acres.

Equitrans attempted to settle the underlying civil action before and after trial, but the Moores refused and countered with other demands. Equitrans then filed this condemnation action under 15 U.S.C. § 717f(h) to obtain a right-of-way through the Property ("the condemnation right-of-way"). The Moores filed a motion to dismiss the complaint for failure to state a claim, and an answer with counterclaims alleging vexatious litigation and trespass by Equitrans. Equitrans then filed a motion to dismiss the counterclaims.

## II.  <u>Applicable Law</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This plausibility standard requires a party to articulate facts that, when accepted as true, demonstrate that the party has stated a claim that makes it plausible that the party is entitled to relief. <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

III.  **Discussion**

A.  **Motion to Dismiss the Complaint**

To state a claim for condemnation under § 717f(h), the plaintiff must plead that: (1) it is a "holder of a certificate of public convenience and necessity"; (2) the right-of-way will be used for the construction, operation, or maintenance of a pipeline; and (3) it was unable to "acquire [the right-of-way] by contract, or [was] unable to agree with the owner of [the] property [as] to . . . compensation."  15 U.S.C. § 717f(h).

Equitrans' complaint facially states a claim for condemnation under § 717f(h).  It alleges that Equitrans holds a certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission, for the creation of the pipeline running through the Moores' property.  Equitrans states that the Property will be used to maintain and operate the pipeline, which is necessary for its transmission of natural gas in interstate commerce.  Finally, Equitrans plead that it "has attempted, but been unable, to acquire the [condemnation] right-of-way through negotiation with [the Moores]."  ECF No. 1 at 3.  It also attached email correspondence between the parties' counsel, showing that Equitrans offered to settle the underlying civil action before and after trial, but the Moores countered with other demands.

Equitrans' complaint clearly pleads all that is necessary for its condemnation claim to survive a motion to dismiss.  However,

the Moores argue that Equitrans' claim fails for several other reasons: (1) Equitrans failed to comply with the Natural Gas Act; (2) condemnation was a compulsory counterclaim in the underlying civil action; (3) Equitrans should be judicially estopped from claiming that it did not comply with the 1960 right-of-way agreement; and (4) condemnation here would violate the Fifth Amendment's Takings Clause.

1.  Compliance With the Natural Gas Act

The Moores argue that Equitrans' condemnation claim must be dismissed because it failed to comply with the Natural Gas Act in building the pipeline and in seeking condemnation. Specifically, the Moores argue that the 1960 right-of-way agreement precludes condemnation of the Property under § 717f(h), and that Equitrans unlawfully entered the Property before seeking a right-of-way or condemnation.

a.  Existence of a Contract

The Moores argue that Equitrans obtained the necessary right-of-way from their predecessors in title in 1960, and thus Equitrans was able to "acquire by contract" the necessary right-of-way. However, the Property is not part of the 1960 right-of-way. See 1:12-cv-123, ECF 102 at 4. The jury specifically found that, regarding the Property, the pipeline is not within the 1960 right-of-way or is trespassing. Moreover, the Moores seek to eject Equitrans from the Property, which would essentially force it to

dig up the existing pipeline and move it to a location within the 1960 right-of-way. While Equitrans does have the 1960 right-of-way, it also has the right to choose the route of the pipeline. See Williams v. Transcontinental Gas Pipe Line Corp., 89 F. Supp. 485, 489 (W.D.S.C. 1950) ("A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line[,] or location of the proposed work or improvement . . . ." (internal quotation marks omitted)). Because the 1960 right-of-way has been determined by the jury in the underlying civil action not to cover the Property, that contract should not be deemed to cover Equitrans' desired condemnation right-of-way.

b.    Pre-Condemnation Occupation of Property

The Moores argue that Equitrans failed to comply with § 717f(h) because it entered and used the Property without first seeking a right-of-way agreement or condemnation. Thus, the Moores argue that Equitrans acted in bad faith and did not attempt to obtain the right-of-way before entering the Property.

First, this Court cannot conclude that Equitrans seeks condemnation in bad faith.[1] This Court must take the allegations

---

[1]Courts are split on whether § 717f(h) requires good faith negotiations. The Ninth Circuit requires proof that the plaintiff engaged in good faith negotiations, Transwestern Pipeline Co. v. 17.19 Acres, 550 F.3d 770, 776 (9th Cir. 2008), while the First Circuit has refused to require a showing of good faith, Maritimes

in Equitrans' complaint as true. Based on the complaint, Equitrans attempted to obtain by contract the condemnation right-of-way several times, but the Moores refused and countered with other demands. Taking these allegations in Equitrans' best light, this Court must conclude that Equitrans attempted in good faith to obtain the condemnation right-of-way by contract and that the Moores rejected those offers.

Second, § 717f(h) does not require the condemnor to seek condemnation before entering the property. The prior unauthorized occupation of property to be condemned does not preclude condemnation. See Searl v. Sch. Dist. No. 2, of Lake Cnty., 133 U.S. 553, 564-65 (1890) ("[P]rior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use." (quoting Secombe v. Milwaukee & St. Paul Ry. Co., 90 U.S. 108, 118 (1874)). This is especially true here because Equitrans maintained throughout the underlying civil action that it built the pipeline within the 1960 right-of-way and, therefore, did not unlawfully enter the Property. Moreover, Equitrans sought to contract for the

_____

& Ne. Pipeline, L.L.C. v. Decoulos, 146 F. App'x 495, 497-98 (1st Cir. 2005) (unpublished). In an unpublished opinion, this Court has refused to require a showing of good faith. Hardy Storage Co., LLC v. Property Interests Necessary to Conduct Gas Storage Operations, No. 2:07CV5, 2009 WL 689054, *5 (N.D. W. Va. Mar. 9, 2009). Regardless of whether good faith is required, Equitrans has sufficiently plead that it made good faith offers to contract for the condemnation right-of-way.

condemnation right-of-way before and after the verdict in the underlying civil action.

The Moores argue that this case is analogous to <u>Humphries v. Williams Natural Gas Co.</u>, 48 F. Supp. 2d 1276 (D. Kan. 1999), and <u>Van Scyoc v. Equitrans, L.P.</u>, No. 2:13-cv-01735, 2015 WL 1346872 (W.D. Pa. Mar. 23, 2015), requiring strict compliance with the Natural Gas Act. However, those cases do not hold that a condemnor must seek condemnation before entering the property. Rather, both cases deal with the question of whether a condemnation claim preempts state law claims (like trespass) that arose before the condemnor sought condemnation. See <u>Humphries</u>, 48 F. Supp. 2d at 1279 ("The court finds that WNG's condemnation action does not preempt Humphries' claims that existed prior to the date that WNG filed its condemnation action."); <u>Van Scyoc</u>, 2015 WL 1346872, *3 ("The primary issue facing the Court is whether the Plaintiff landowners['] . . . state law claims . . . *must* be construed as inverse condemnation claims, which would be preempted by the [NGA] . . . . [T]he Court concludes that the Plaintiffs' claims are not preempted by the NGA." (emphasis in original)). Neither of the courts in these cases concluded that the condemnors' failure to seek condemnation before entering the property precluded them from seeking condemnation under § 717f(h). Rather, the courts assumed that the condemnation actions could continue in the face of the unlawful prior entries. See <u>Humphries</u>, 48 F. Supp. 2d at 1279 n.3

(considering when "the damages may cease to accumulate on Humphries' state law claims," and "assum[ing] without deciding that Humphries' damages on his state law claims will stop accumulating on the date that this court grants, if ever, the relief sought in WNG's condemnation action.").

2. <u>Compulsory Counterclaim</u>

The Moores argue that Equitrans waived its condemnation claim because it constituted a compulsory counterclaim in the underlying civil action that Equitrans failed to file.

Federal Rule of Civil Procedure 13(a) requires a party to file as a counterclaim any claim that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim[,] . . . does not require adding another party over whom the court cannot acquire jurisdiction," and that exists "at the time of its service." Fed. R. Civ. P. 13(a). A counterclaim is compulsory only if it is mature, meaning that all the elements for the counterclaim are present before the answer is served. <u>See</u> <u>Pace v. Timmermann's Ranch & Saddle Shop Inc.</u>, 795 F.3d 748, 757-58 (7th Cir. 2015) (concluding that former employee's abuse of process claim against employer matured when all the elements were present before the employer sued her for conversion breach of fiduciary duty, fraud, and unjust enrichment, and it therefore became a compulsory counterclaim); <u>Steel v. Morris</u>, 608 F. Supp. 274, 275-76 (S.D. W. Va. 1985) (concluding that cause of

action for abuse of process had not accrued before the defendant served the answer, and therefore was not a compulsory counterclaim).

Here, Equitrans' condemnation claim became mature after it served its answer in the underlying civil action. Equitrans maintained throughout the underlying civil action that its pipeline was within the 1960 right-of-way. The core factual and legal issue in that case was whether Equitrans had a contractual right to a right-of-way over the Property. Section 717f(h)'s requirement that Equitrans be unable to contract for the condemnation right-of-way was logically dependent upon the resolution of the underlying civil action. If Equitrans was within the 1960 right-of-way, it would have had a contract for the necessary right-of-way and condemnation would not be available. Therefore, Equitrans' condemnation claim could not have matured until after the pipeline was found to be outside the 1960 right-of-way.

Even so, Equitrans' condemnation claim was not a compulsory counterclaim in the underlying civil action. To determine whether a counterclaim is compulsory, this Court must consider: (1) whether "the issues of fact and law" raised by the claim and the counterclaim are "largely the same"; (2) whether res judicata would bar a subsequent suit on the . . . counterclaim"; (3) whether "substantially the same evidence" supports or refutes both the claim and the counterclaim; and (4) whether any "logical

relationship" exists between the claim and the counterclaim. Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988).

The facts and law applicable to this condemnation claim, as well as the evidence required to support it, are very different from those required in the Moores' trespass and breach of contract claims in the underlying civil action. Res judicata would not bar this condemnation action because the underlying civil action did not resolve any factual issues pertinent to this case other than a determination that the relevant portions of the pipeline are outside the 1960 right-of-way or are trespassing.[2]  Finally, Equitrans' condemnation claim is logically dependent on the underlying claim only to the extent that it could not seek condemnation until it was determined that the relevant portions of the pipeline are outside the 1960 right-of-way.  Thus, none of these factors weigh in favor of finding that the condemnation claim was a compulsory counterclaim in the underlying civil action.

3.   Judicial Estoppel

Although the jury found in the underlying civil action that Equitrans did not comply with the 1960 right-of-way or was trespassing on the Property, the Moores argue that judicial

_____

[2]"For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."  Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004).

estoppel should apply to hold Equitrans to its losing position: that Equitrans complied with the 1960 right-of-way.

Judicial estoppel applies only if: (1) "the party sought to be estopped . . . [is] seeking to adopt a position that is inconsistent with a stance taken in prior litigation"; (2) "the prior inconsistent position . . . [was] accepted by the court"; and (3) "the party against whom judicial estoppel is to be applied . . . intentionally misled the court to gain unfair advantage." Zirkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) (internal quotation marks omitted). Furthermore, "[t]he position at issue must be one of fact as opposed to one of law or legal theory," and the "bad faith requirement is the 'determinative factor.'" Id.

The Moores argue that in the underlying civil action, Equitrans took the position that it complied with the 1960 right-of-way, but now says that it did not comply with the 1960 right-of-way in regard to the property. However, the jury verdict in the underlying civil action provides that Equitrans in fact did not comply with the 1960 right-of-way regarding the property. The Moores are essentially asking this court to hold Equitrans to its losing position in the underlying civil action, which is factually inconsistent with the verdict. But judicial estoppel applies only where the party to be estopped took a prior position that was "accepted by the court," Zirkand, 478 F.3d at 638, and this Court did not accept Equitrans' position that it complied with the 1960

12

right-of-way.  Moreover, there is no indication that Equitrans intended to intentionally mislead this Court in defending itself in the underlying civil action.

    4.   <u>Unconstitutional Taking</u>

The Moores argue that condemnation here would violate the Fifth Amendment's Takings Clause.  Specifically, they argue that Equitrans lacks a public purpose in condemning the property and that the taking would be excessive.

The Fifth Amendment to the United States Constitution permits the taking of private property only "for public use" and with "just compensation."  U.S. Const. amend. V.  To satisfy the public use requirement, a taking need only be "rationally related to a conceivable public purpose."  <u>Hawaii Housing Auth. v. Midkiff</u>, 467 U.S. 229, 245 (1984).  Public use is not necessarily established whenever a legislative body acts, as "[t]here is, of course a role for courts to play in reviewing a legislature's judgment of what constitutes a public use," but so long as the legislative act is not meant "to benefit a particular class of identifiable individuals but to [further] . . . a legitimate public purpose," the act does not violate the Fifth Amendment.  <u>Id.</u> at 240, 245.

First, Equitrans has a public purpose in condemning the property under the Natural Gas Act.  In passing the Natural Gas Act, Congress concluded that "the business of transporting and selling natural gas for ultimate distribution to the public is

affected with a public interest, and that federal regulation in matters relating to the transportation [and sale] of natural gas . . . is necessary in the public interest." 15 U.S.C. § 717(a). The Natural Gas Act is a valid exercise of Congress' power to regulate interstate commerce, Fed. Power Comm'n v. Natural Gas Pipeline Co. of Am., 315 U.S. 575, 582-83 (1942), and Congress constitutionally delegated the right to condemn to private licensees under § 717f(h). See Thatcher v. Tenn. Gas Transmission Co., 180 F.2d 644, 648 (5th Cir.) ("[T]he grant of the power of eminent domain provided by the Natural Gas Act is a regulation of interstate commerce by Congress and not the equivalent of [a taking for a private purpose] . . . ."), cert. denied, 340 U.S. 829 (1950); Williams v. Transcontinental Gas Pipe Line Corp., 89 F. Supp. 485, 487 (D.S.C. 1950) ("Congress [may] constitutionally bestow the right of condemnation upon such private licensees as have been charged with the development of the national policy as to the interstate movement of natural gas."). By enacting § 717f(h), Congress concluded that the taking of rights-of-way to build natural gas pipelines is a public use, as it furthers the public interest in "the business of transporting and selling natural gas for the ultimate distribution to the public." 15 U.S.C. § 717(a). Section 717f(h)'s delegation of condemnation power furthers a legitimate public interest and does not violate the Fifth Amendment.

It therefore follows that Equitrans' condemnation claim does not violate the Fifth Amendment if its pleadings are sufficient to state a condemnation claim under § 717f(h). Equitrans sufficiently plead its condemnation claim and, therefore, has a public purpose in condemning the property under § 717f(h).

Second, the Moores argue that condemnation of the property would constitute an excessive taking because it is not strictly necessary for Equitrans to maintain the pipeline and provide gas to its customers. The Moores rely on <u>City of Cincinnati v. Vester</u>, 281 U.S. 439 (1930), to argue that "the taking of more land than is needed to be occupied by the improvement directly in contemplation" violates the Fifth Amendment. <u>Id.</u> at 440. However, in that case the Supreme Court was applying the excess condemnation provision in the Ohio constitution, not the Fifth Amendment. <u>See id.</u> at 441 (citing Ohio Const. art. 18, § 10). Under the Fifth Amendment, a taking is valid so long as it is for a public purpose and for just compensation. U.S. Const. amend. V. Thus, because Equitrans' complaint is sufficient to state a condemnation claim under § 717f(h) and that section satisfies the Fifth Amendment, Equitrans' claim does not facially violate the Fifth Amendment.

B.    <u>Equitrans' Motion to Dismiss the Moores' Counterclaims</u>

Equitrans argues that this Court should dismiss the Moores' counterclaim because it is barred under Federal Rule of Civil Procedure 71.1(e)(3). Equitrans argues that the only responsive

pleading allowed under Rule 71.1(e)(3) is an answer and not a counterclaim. The Moores argue that a counterclaim is not a pleading and therefore is not barred under that Rule.

Rule 71.1(e)(3) provides that

A defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed. But at the trial on compensation, a defendant--whether or not it has previously appeared or answered--may present evidence on the amount of compensation to be paid and may share in the award.

Fed R. Civ. P. 71.1(e)(3). After extensive research into this matter, this Court concludes that a counterclaim is not a pleading, but is nevertheless barred under Rule 71.1(e) because it is not an objection or defense to the condemnation claim.

First, a counterclaim is not a pleading, but is a claim for relief that may be stated in a pleading. Federal Rule of Civil Procedure 7(a) provides an exhaustive definition of "pleading" as used in the Rules. Rule 7(a) states that "[o]nly these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim . . . ; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) . . . a reply to an answer." Fed. R. Civ. P. 7(a). But Rule 7(a) does not list counterclaims as a permissible pleading. Rule 13 refers to counterclaims as claims for relief. <u>See</u> Fed. R. Civ. P. 13 ("A pleading must state as a counterclaim any <u>claim</u> . . . ." (emphasis added)). Similarly, Rule 12(a)(1)(B) suggests that

a counterclaim is a claim for relief stated in an answer. <u>See</u> Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim . . . within 21 days after being served with the <u>pleading that states</u> the counterclaim . . . ." (emphasis added)). Therefore, this Court concludes that a counterclaim is a claim for relief that may be stated in a pleading, but is not a pleading itself. <u>See</u> <u>Columbia Gas Transmission LLC v. Crawford</u>, 267 F.R.D. 227, 228-29 (N. D. Ohio 2010) (concluding that a counterclaim is not a pleading).[3] Thus, Rule 71.1(e)(3) does not categorically bar counterclaims as unauthorized pleadings.

Second, as a "claim for relief" that may be stated in a pleading, a counterclaim is barred by Rule 71.1(e) because it is not an objection or defense to the condemnation claim. Rule 71.1(e) expressly "prescribes what matters the answer should set forth." Fed. R. Civ. P. 71.1 advisory committee's notes to 1951 Addition, Note to Subdivision (e). Rule 71.1(e) provides that if a defendant "has an objection or defense to the taking," he may serve an answer, and "the answer must: (A) identify the property in which the defendant claims an interest; (B) state the nature and extent of the interest; and (C) state all the defendant's

---

[3]Although the <u>Crawford</u> court correctly concluded that counterclaims are not pleadings, this Court believes that the <u>Crawford</u> court incorrectly concluded that Rule 71.1(e) therefore did not bar counterclaims. 267 F.R.D. at 228-29. As discussed below, Rule 71.1(e) bars counterclaims because it provides that an answer may only contain objections and defenses to condemnation, not claims for relief.

objections and defenses to the taking." Fed. R. Civ. P. 71.1(e)(2). Nowhere does the rule state that the defendant may plead any claims for relief. Moreover, Rule 71.1(a) expressly states that the other Federal Rules of Civil Procedure do not apply to condemnation proceedings unless Rule 71.1 provides otherwise, and Rule 71.1 does not invoke the application of other rules regarding what may be plead in an answer. This makes sense because Rule 71.1 provides for the narrow adjudication of only the condemnation claim by requiring "[o]ne pleading to raise all objections and defenses to the <u>taking</u> and one hearing to dispose of them . . ., not successive pleadings and successive hearings spanning a much longer period of time." <u>Atl. Seaboard Corp. v. Van Sterkenburg</u>, 318 F.2d 455, 458 (4th Cir. 1963) (emphasis added). Because a counterclaim is a claim for relief, it is not an objection or defense to a condemnation claim. Therefore, this Court concludes that Rule 71.1(e) allows a defendant to file an answer containing only defenses and objections to the condemnation claim, but not a counterclaim. <u>See</u> <u>United States v. Certain Land Situated in City of Detroit</u>, 361 F.3d 305, 308 (6th Cir. 2004) ("The Rule evidences that district courts only have jurisdiction to hear defenses and objections from defendants in condemnation cases.").

Equitrans cites various authorities for the proposition that Rule 71.1(e)(3) categorically bars counterclaims as unauthorized

pleadings. But, after thoroughly reviewing these authorities and the body of case law on this matter, this Court finds no credible authority to support Equitrans' position. Rather, the district courts that have concluded that Rule 71.1(e)(3) categorically bars counterclaims as unauthorized pleadings seem, to this Court, to have misinterpreted Circuit Court precedent regarding sovereign immunity and subject matter jurisdiction over claims under the Tucker Act (repealed and codified in scattered sections of 28 U.S.C.).

Equitrans cites a footnote in Washington Metropolitan Area Transit Authority v. Precision Small Engines, 227 F.3d 224 (4th Cir. 2000), claiming that it shows "well established precedent in the Fourth Circuit" that counterclaims are barred under Rule 71.1. ECF No. 11 at 6. However, the footnote Equitrans cites is dicta, as the Fourth Circuit concluded that the defendants failed to preserve their arguments on the counterclaim issue. Id. at 228. The court went on to note that even if the issue were preserved, the counterclaim would have been barred because the defendant "failed to file an answer altogether to [the] notice of the taking, . . . it effectively waived the substance of its 'Counter Claim.'" Id. at 228 n.2. Thus, the Fourth Circuit did not state that counterclaims are barred categorically, but only that a defendant cannot file a counterclaim almost a year after it failed to file a timely answer to a condemnation claim. Id. at 226, 228 n.2.

Equitrans also relies on <u>Columbia Gas Transmission, LLC v.</u> <u>14.96 Acres</u>, No. 2:14-cv-27773, 2015 WL 3756710 (S.D. W. Va. June 16, 2015), an unpublished opinion from the Southern District of West Virginia wherein the court concluded that Rule 71.1(e)(3) bars counterclaims as pleadings. The court relied upon <u>Washington</u> <u>Metro</u>, <u>United States v. 191.07 Acres of Land</u>, 482 F.3d 1132 (9th Cir. 2007), <u>United States v. 3,317.39 Acres of Land</u>, 443 F.2d 104, 106 (8th Cir. 1971), and various district court decisions relying on those cases. However, none of those cases stand for the proposition that counterclaims are categorically barred as unauthorized pleadings under Rule 71.1(e). Instead, it seems that district courts may have confused early sovereign immunity based reasoning for an interpretation of Rule 71.1(e) and its predecessor Rule 71A(e). All of the Circuit Court cases on this issue deal with condemnation claims brought by the United States, and those courts concluded that they lacked subject matter jurisdiction to hear a counterclaim against the United States in a condemnation action under the doctrine of sovereign immunity and the Tucker Act. <u>See</u> <u>United States v. Certain Land Situated in City of Detroit</u>, 361 F.3d 305, 307-08 (6th Cir. 2004) (concluding that the court lacked subject matter jurisdiction to hear an intervening party's counterclaim against the United States in condemnation); <u>United</u> <u>States v. Banisadr Bldg. Joint Venture</u>, 65 F.3d 374, 380 (4th Cir. 1995) (concluding that the court lacked subject matter jurisdiction

to hear a counterclaim because the claim must be "in a separate action filed under the Tucker Act"); United States v. 79.20 Acres, 710 F.2d 1352, 1356 n.5 (8th Cir. 1983) (concluding that the court had no jurisdiction to hear a counterclaim because "[t]he United States, as sovereign, is immune from suit"); United States v. 38.60 Acres of Land, 625 F.2d 196, 199 (8th Cir. 1980) (concluding that the court lacked subject matter jurisdiction to hear counterclaims against the United States under sovereign immunity and the Tucker Act); United States v. 6,321 Acres of Land More or Less in Suffolk Cnty., 479 F.2d 404, 406-07 (1st Cir. 1973) (concluding that the counterclaim "may only be heard in the Court of Claims" under the Tucker Act, and that Rule 71A (Rule 71.1's predecessor) "did not effect a waiver of the government's immunity"); United States v. 3,317.39 Acres of Land, 443 F.2d 104, 106 (8th Cir. 1971) (concluding that the court lacked subject matter jurisdiction on sovereign immunity grounds). The closest a Circuit Court has come to concluding that counterclaims are categorically barred under Rule 71.1(e) was in United States v. 191.07 Acres of Land, 482 F.3d 1132 (9th Cir. 2007), wherein the Ninth Circuit concluded that "[a] property owner cannot file a counterclaim in a direct condemnation action." Id. at 1140. However, that case also involved a counterclaim against the United States. In making its conclusion the court cited United States v. 40.60 Acres, 483 F.2d 927 (9th Cir. 1973), in which the Ninth Circuit noted in dicta a split as to

21

"whether Tucker Act claims can ever be brought as counterclaims."
Id. at 928 n.1. Thus, it appears that there is no Circuit Court
authority supporting the proposition that a counterclaim is
categorically barred under Rule 71.1(e) as an impermissible
pleading.

The Columbia Gas court also relied on various district court
decisions, which all seem to this Court to misinterpret the above
discussed authority and conclude that counterclaims are
categorically barred under Rule 71.1(e). The court cited Kansas
Pipeline Co. v. A 200 Foot by 250 Foot Piece of Land, 210 F. Supp.
2d 1253 (D. Kan. 2002), wherein the United States District Court
for the District of Kansas relied on Washington Metro and Wright on
Federal Practice and Procedure in concluding that counterclaims are
not permitted. Id. at 1258. However Washington Metro, as
discussed above, does not provide authority for that conclusion and
Wright simply cites the sovereign immunity based decisions
discussed above. See 12 Charles Alan Wright, Arthur R. Miller,
Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal
Practice and Procedure § 3048 n.5 (3d ed. 2014). The Columbia Gas
court also cited United States v. 1.58 Acres of Land, 523 F. Supp.
120, 122 (D. Mass. 1981), which relied on United States v. 6,321
Acres of Land More or Less in Suffolk Cnty., 479 F.2d 404, 406-07
(1st Cir.), wherein the First Circuit concluded that the
defendants' counterclaim "may only be heard in the Court of Claims"

under the Tucker Act.  Id. at 406-07.  The other unpublished
district court opinions the Columbia Gas court cited similarly rely
on decisions dealing with sovereign immunity.  See Constitution
Pipeline Co., LLC v. A Permanent Easement for 2.40 Acres, 3:14-CV-
2046, 2015 WL 1726223, *1 (N.D.N.Y. Apr. 14, 2015) (relying on the
Circuit Court cases discussed above and various district court
cases); New West v. City of Joliet, Nos. 05C1743, 07C7214, 11C5305,
2012 WL 366733, *6 (N.D. Ill. Jan. 30, 2012) (same);  N. Natural
Gas Co. v. Approximately 9117.53 Acres, No. 10-1232-WEB, 2011 WL
2118642, *4 (D. Kan. May 27, 2011) (citing no authority).  Because
this Court finds that counterclaims are not pleadings and that
there is no authority supporting Equitrans' position, this Court
concludes that Rule 71.1(e)(3) does not categorically bar a
counterclaim as an unauthorized pleading.  Rather, Rule 71.1(e)
bars counterclaims because they are not objections or defenses to
condemnation.

## IV.  Conclusion

The plaintiff's complaint sufficiently pleads its condemnation
claim, and the defendants' counterclaims are barred under Rule
71.1(e).  Accordingly, the defendants' motion to dismiss the
complaint (ECF No. 6) is DENIED, and the plaintiff's motion to
dismiss the counterclaims (ECF No. 10) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     November 18, 2015

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE